14-191-cv
Hart v. FCI Lender Services, Inc.

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

————————

August Term, 2014

(Argued: August 27, 2014        Decided: August 12, 2015)

No. 14-191-cv

————————

MATTHEW J. HART,
on behalf of plaintiff and the class defined herein,

*Plaintiff-Appellant,*

*v.*

FCI LENDER SERVICES, INC.,

*Defendant-Appellee.*

————————

B e f o r e :

WINTER, RAGGI, AND CARNEY, *Circuit Judges.*

————————

Matthew J. Hart brings suit against FCI Lender Services, Inc., his mortgage
loan servicer and a debt collector, alleging that FCI violated the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in sending certain
communications to Hart without providing statutorily required information
about his debt. The United States District Court for the Western District of New

York (Charles J. Siragusa, *Judge*) granted FCI's motion to dismiss for failure to state a claim, ruling that FCI had not sent Hart any "communication . . . in connection with the collection of [a] debt" under the FDCPA, 15 U.S.C. § 1692g. We disagree and conclude that Hart adequately pleaded that FCI's letter triggered notification duties under the statute. Accordingly, we VACATE the judgment and REMAND the cause for further proceedings in accordance with this opinion.

> DANIEL A. EDELMAN (Cathleen M. Combs, Tiffany N. Hardy, *on the brief*), Edelman, Combs, Latturner & Goodwin, LLC, Chicago, Illinois, *for Matthew J. Hart*.

> PRESTON L. ZARLOCK (Spencer L. Durland, *on the brief*), Phillips Lytle LLP, Buffalo, New York, *for FCI Lender Services, Inc.*

_____

SUSAN L. CARNEY, *Circuit Judge*:

Matthew J. Hart sued FCI Lender Services, Inc. ("FCI"), his mortgage loan servicer and a debt collector, seeking damages under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.*, on behalf of himself and others similarly situated. Hart asserts that FCI violated the Act by sending him two written communications that failed to comply with FDCPA requirements that debt collectors timely provide certain notices to debtors. The first of the communications is a letter advising Hart that FCI had assumed mortgage servicing responsibilities related to Hart's mortgage loan. The second is a payment statement that FCI sent Hart some months later. The Act's notice

1    obligations are triggered by a debt collector's "initial communication with a

2    consumer in connection with the collection of any debt."  15 U.S.C. § 1692g.

3           The United States District Court for the Western District of New York

4    (Charles J. Siragusa, *Judge*) granted FCI's motion to dismiss Hart's amended

5    complaint for failure to state a claim, ruling principally that the letter, which the

6    court viewed as primarily a transfer-of-servicing informational notice sent

7    pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.

8    § 2605, was not also a communication sent "in connection with the collection of

9    any debt" under the FDCPA.  *See Hart v. FCI Lender Servs., Inc.*, No. 13-CV-6076,

10   2014 WL 198337 (W.D.N.Y. Jan. 15, 2014).  The District Court also ruled that Hart

11   failed to allege (adequately or otherwise) that FCI violated the FDCPA by

12   mailing the payment statement.  Finally, the District Court denied Hart leave to

13   file a second amended complaint.  On appeal, Hart challenges all three rulings.

14          Construing the FDCPA in light of its remedial purposes, we agree with

15   Hart that he has adequately alleged that FCI sent the letter "in connection with

16   the collection of [a] debt," thereby triggering the FDCPA's initial notice

17   requirements.  We accordingly vacate the judgment and remand for further

18   proceedings, without addressing Hart's alternative arguments that the later

3

1    payment statement triggered those requirements and that he should have been

2    given a further opportunity to amend his complaint.

3

4                                **BACKGROUND**

5            We draw this narrative from the allegations of Hart's first amended

6    complaint, *see* App. 113-32, including the documents attached to the amended

7    complaint as exhibits, *see* Fed. R. Civ. P. 10(c).  We accept Hart's well-pleaded

8    factual allegations as true and draw all reasonable inferences in his favor.  *See*

9    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10           Hart, a mortgagor, filed suit under the Act seeking damages from FCI, a

11   corporation offering "a full spectrum of loan servicing, collection and foreclosure

12   services locally or nationally."  Am. Compl. ¶ 8.   As an "integral part of its

13   business," FCI regularly collects payments on "non[-]performing" loans—that is,

14   loans that are in default.  *Id.* ¶ 11.  Hart's case rests primarily on a letter sent to

15   him by FCI in July 2012 (the "Letter"), after FCI assumed loan servicing

16   obligations for Hart's mortgage loan from GMAC Mortgage, LLC ("GMAC"), the

17   prior servicer.  Hart was in default on his mortgage loan when FCI assumed

18   servicing responsibilities.

                                        4

1    The text of the Letter requires our close scrutiny.  Entitled "Transfer of

2    Servicing Letter" and dated "7/17/2012," it consists of one and one-half pages on

3    FCI letterhead in the format of a signed letter, and two numbered pages of

4    attachments.  App. 123-26.  In the body of the Letter, FCI notifies Hart that FCI

5    has become his mortgage loan servicer:  The text begins, "Please be advised that

6    effective June 28, 2012 the servicing of your mortgage loan with GMAC

7    Mortgage, LLC, secured by a Deed of Trust/Mortgage on real property, has been

8    assigned to FCI Lender Services, Inc."  App. 123.  It informs Hart that his loan

9    number has been changed and instructs that "[b]eginning June 28, 2012 you

10   should mail your payments, including all past due payments, to FCI Lender

11   Services, Inc. . . . ."  *Id.*  The Letter provides relevant timing, payment, and

12   correspondence particulars about the transfer.

13   The body of the Letter also refers expressly to consumer rights conferred

14   by section 6 of RESPA.  Congress enacted RESPA to protect consumers from

15   certain "abusive practices" that had developed "in some areas of the country"

16   with respect to the settlement process used for residential real estate purchases

17   and sales.  12 U.S.C. § 2601(a).  RESPA obligates a new servicer of certain types of

18   mortgage loans timely to notify the borrower of the change in servicer and to

5

1   provide certain other information regarding the transfer.  *See id.* § 2605(c).

2   Reflecting (as none dispute) FCI's effort to meet its obligations under RESPA, the

3   Letter's body identifies the effective date of the servicing transfer, provides

4   phone numbers for both FCI and GMAC, and further details Hart's rights under

5   RESPA regarding (for example) the timeliness of payments sent during the

6   transfer period and how a consumer may dispute aspects of his account.

7          The Letter's third page (the first page of the attachment) plays a pivotal

8   role here.  Entitled "IMPORTANT NOTICES – PLEASE READ," it contains the

9   following language, in the following format (insofar as reproducible here):

10                **NOTICE**

11                THIS IS AN ATTEMPT TO COLLECT UPON A DEBT,
12                AND ANY INFORMATION OBTAINED WILL BE USED
13                FOR THAT PURPOSE
14
15                **YOU HAVE THE FOLLOWING RIGHTS**
16
17                THIS DEBT WILL BE ASSUMED TO BE VALID UNLESS
18                YOU DISPUTE ITS VALIDITY WITHIN 30 DAYS AFTER
19                RECEIVING THIS NOTICE.
20
21                IF YOU NOTIFY THIS OFFICE IN WRITING THAT THE
22                DEBT IS DISPUTED WITHIN 30 DAYS, THIS OFFICE
23                WILL MAIL TO YOU VERIFICATION OF THE DEBT
24                OR A COPY OF THE JUDGMENT AGAINST YOU.
25
26                THIS OFFICE WILL PROVIDE YOU WITH THE NAME
27                AND ADDRESS OF THE ORIGINAL CREDITOR (IF

1          DIFFERENT FROM THE CURRENT CREDITOR) UPON
2          YOUR WRITTEN REQUEST WITHIN 30 DAYS.
3
4          IT IS IMPORTANT THAT YOU UNDERSTAND THAT
5          YOU HAVE THE RIGHT TO ENFORCE THE ABOVE
6          NOTICE.
7
8          FAIR DEBT COLLECTION PRACTICES ACTS
9
10         The federal Fair Debt Collection practices Act . . .
11         require[s] that, except under unusual circumstances,
12         collectors may not contact you before 8 a.m. or after 9
13         p.m.  They may not harass you by using threats of
14         violence or arrest or by using obscene language.
15         Collectors may not use false or misleading statements or
16         call you at work if they know or have reason to know
17         that you may not receive personal calls at work.  For the
18         most part, collectors may not tell another person, other
19         than your attorney or spouse, about your debt.
20         Collectors may contact another person to confirm your
21         location or enforce a judgment.  For more information
22         about debt collection activities, you may contact the
23         Federal Trade Commission at 1-877-FTC-HELP or
24         www.ftc.gov.
25
26  App. 125 (sic).[1]  The attachment is not separately signed, and it follows the

27  signature line appearing on the second page of the main body of the Letter.  *See*

28  App. 124.

29       On February 13, 2013, Hart filed this suit against FCI as a putative class

30  action, alleging that FCI violated the FDCPA by sending the Letter and, *inter alia*,

---

[1] The second attachment page (the fourth page of the Letter) is entitled "FCI Lender Services, Inc. PRIVACY NOTICE," App. 126, and contains information solely about FCI's privacy practices not relevant here.

1    "failing to identify the current creditor" and "misstat[ing] the debtor's rights,"

2    Compl. ¶ 28 – information that the Act requires a debt collector to provide within

3    five days of an "initial communication with a consumer in connection with the

4    collection of any debt," 15 U.S.C. § 1692g.  Hart sought an award of statutory

5    damages.[2]  In an amended complaint filed some months later, Hart added

6    allegations that his mortgage was in default when it was transferred to FCI for

7    servicing and that FCI regularly and as an integral part of its business collected

8    debts, both factors that he contended rendered FCI a "debt collector" under the

9    Act.  Hart attached as an exhibit to the amended complaint both the Letter and a

10   December 28, 2012 payment statement (the "Payment Statement") sent by FCI to

11   Hart and showing past-due amounts of $31,736.43, as well as the principal

12   balance of Hart's loan and late charges due.  *See* App. 128.

13         FCI moved under Fed. R. Civ. P. 12(b)(6) to dismiss the amended

14   complaint for failure to state a claim, arguing principally that as a matter of law

15   the Letter was not FCI's "initial communication . . . in connection with the

16   collection of any debt" under the FDCPA.  The District Court accepted that

17   argument and granted FCI's motion to dismiss.  *See Hart*, 2014 WL 198337, at *7-

---

[2] The FDCPA provides for recovery of actual damages, certain statutory damages, and award of a reasonable attorney's fee upon a proven violation.  *See* 15 U.S.C. § 1692k(a).

8

1    8.  In light of deadlines imposed by a scheduling order entered in the interim,[3]

2    the District Court concluded further that Hart was not entitled to amend his

3    complaint a second time to add allegations that the Payment Statement, too, gave

4    rise to notice obligations under the Act.  *See id*. at *7.

5        Hart timely appealed.

6

7                              **DISCUSSION**

8        Hart maintains that the Letter was sent "in connection with the collection

9    of [a] debt."  In the alternative, he contends that the amended complaint

10   plausibly established that the Payment Statement triggered FCI's notice

11   obligations and that the District Court abused its discretion in denying him leave

12   to further amend his complaint to add new allegations relating to the Payment

13   Statement.  FCI responds, in essence, that: (1) the Letter was intended merely to

14   comply with RESPA by providing certain information – that is, it was not aimed

15   at "collect[ing] [a] debt" – and thus did not trigger the FDCPA's notice

16   requirements; (2) Hart failed to plead adequately that the Payment Statement

---

[3] On June 12, 2013, Magistrate Judge Jonathan W. Feldman issued a Scheduling Order directing that "[a]ll motions to . . . amend the pleadings . . . be filed on or before September 12, 2013," and warning that extension of the amendment deadline would be granted only upon good cause shown prior to the deadline.  *See Hart*, 2014 WL 198337, at *3.

9

1    served as a predicate for an FDCPA violation; and (3) the District Court acted

2    within the fair scope of its discretion in denying Hart a second opportunity to

3    amend his complaint.

4         We review *de novo* a district court's grant of a defendant's motion to

5    dismiss.  S*ee City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173

6    (2d Cir. 2011).  To survive a motion to dismiss, a complaint "must contain

7    sufficient factual matter, accepted as true, to state a claim to relief that is

8    plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

9

10   **1.  The FDCPA**

11

12        In passing the FDCPA, Congress aimed "to eliminate abusive debt

13   collection practices by debt collectors, to insure that those debt collectors who

14   refrain from using abusive debt collection practices are not competitively

15   disadvantaged, and to promote consistent State action to protect consumers

16   against debt collection abuses."  15 U.S.C. § 1692(e).  A particular goal was to

17   address "'the recurring problem of debt collectors dunning the wrong person or

18   attempting to collect debts which the consumer has already paid.'"  *Jacobson v.*

10

1   *Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting S. Rep. No. 95–

2   382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).

3          Section 1692g of Title 15 (in which the Act is codified) is entitled

4   "Validation of debts" and requires a "debt collector" to furnish a written notice

5   conveying certain information (the "§ 1692g notice") to a consumer debtor upon

6   the debt collector's "initial communication with a consumer in connection with

7   the collection of any debt."  15 U.S.C. § 1692g(a).[4]  When an initial

8   communication triggers the Act's notice obligations, the debt collector must

9   either include a § 1692g notice in that communication or send a separate written

10  notice to the debtor within the following five days, unless by that time the debtor

11  has already paid the debt.  *See id.*  The required contents of the § 1692g notice

12  relate both to the particular debt and to the consumer's rights under the Act: the

13  notice must state the amount of the debt and the name of the creditor to whom

14  the debt is owed and must inform the consumer of her right to dispute the debt's

---

[4] Debt collectors (within the statutory definition) must provide a § 1692g notice only to "consumers," whom the Act defines as "any natural person[s] obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  For purposes of our discussion of the FDCPA, we refer to "debtors," "consumers," and "consumer debtors" interchangeably.

1    validity.[5] And to enforce these and other provisions, the FDCPA "grants a

2    private right of action to a consumer who receives a communication that violates

3    the Act." *Jacobson*, 516 F.3d at 91; *see* 15 U.S.C. § 1692k.

4        FCI concedes for purposes of this appeal that it is a "debt collector"

5    covered by the Act. Further, the parties agree that the Letter was FCI's "initial

6    communication" with Hart.[6] The parties disagree, however, as to whether that

7    initial communication was "in connection with the collection of any debt," so as

---

[5] Section 1692g provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing –
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

[6] The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

1    to give rise to § 1692g notice obligations; the statute offers no definition for the

2    phrase.

3

4    **2. <u>The Letter</u>**

5

6    FCI urges that, rather than seeking to compel Hart to pay his debt, the

7    Letter was intended only to provide transfer-of-servicing information so as to

8    comply with RESPA.  Accordingly, FCI argues, the Letter was not sent "in

9    connection with the collection" of Hart's debt, and FCI had no obligation to

10    provide the complete recitation of debt-related information required by § 1692g.

11    The District Court accepted this construction of both the Act and the

12    Letter.  Examining the Letter, which it denominated the "transfer-of-servicing"

13    or "RESPA" letter, the court reasoned that:

14        [The Letter] did not attempt to *induce* [Hart] to make payment, but
15        rather, it assumes that he will be making payments and directs *where*
16        he should send them.  The notice is informational in nature, and
17        does not reference an amount owed or threaten to take any action if
18        payment is not made. . . . [T]he document itself establishes that it
19        was not sent in order to induce [Hart] to make a payment.

20

21    *Hart*, 2014 WL 198337, at *6-7 (emphasis in original).  The court acknowledged

22    that the third page of the Letter included certain required FDCPA notifications—

23    including the language "THIS IS AN ATTEMPT TO COLLECT UPON A DEBT,"

1 *see id*. at *2—but the court did not refer to that material in its analysis, *see id.* at *5-

2 7.

3     This court has never addressed the scope of the FDCPA's "in connection

4 with the collection of any debt" language.  We here conclude that whether a

5 communication is "in connection with the collection of [a] debt" is a question of

6 fact to be determined by reference to an objective standard.  Thus, in determining

7 at the motion to dismiss stage whether the Letter triggers the Act's notice

8 provisions, we must view the communication objectively, asking whether Hart

9 has plausibly alleged that a consumer receiving the communication could

10 reasonably interpret it as being sent "in connection with the collection of [a]

11 debt," rather than inquiring into the sender's subjective purpose.  *See, e.g.*, *Ruth v.*

12 *Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009) ("[T]he proper standard [for

13 assessing whether a communication is in connection with the collection of any

14 debt] is an objective one."); *cf. Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169,

15 173 (6th Cir. 2011) (affirming award of summary judgment to defendant where a

16 "reasonable jury could not find" that the communication was in connection with

17 the collection of a debt).  Such an inquiry is consistent with the FDCPA's goal of

18 protecting consumers: if a consumer receiving a letter could reasonably

14

1    understand it to be a communication in connection with the collection of a debt,

2    then the consumer is entitled to the protections Congress has mandated for such

3    communications.  An objective standard that determines the apparent purpose of

4    a communication with an eye towards a consumer's understanding also aligns

5    with our teaching that the FDCPA is "remedial in nature, [and] its terms must be

6    construed in liberal fashion if the underlying Congressional purpose is to be

7    effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (internal

8    quotation marks omitted).

9         The parties dispute the extent to which a communication—to be deemed

10   made "in connection with the collection of any debt"—must be designed to

11   induce the debtor's payment.  FCI, citing standards adopted by the Sixth and

12   Seventh Circuits, argues that such a communication "must attempt to induce the

13   borrower to pay, not just convey information about the debt."  Appellee's Br. 19;

14   *see Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384-85 (7th Cir. 2010) (ruling

15   that the FDCPA "does not apply to *every* communication between a debt

16   collector and a debtor," but that a communication made "to induce" a debtor to

17   settle her debt will trigger the statute's protections (emphasis in original)); *see also*

18   *Grden*, 643 F.3d at 173 (holding that, for the FDCPA's notice provision to apply,

15

1    "an animating purpose of the communication must be to induce payment by the

2    debtor").  Hart, in turn, points out that a district court in our Circuit, in *Tocco v.*

3    *Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535 (S.D.N.Y. 2014), recently construed

4    the phrase far more flexibly when it rejected the information/inducement

5    dichotomy and reasoned that "in connection with" is "synonymous with the

6    phrases 'related to,' 'associated with,' and 'with respect to,'" and does not

7    necessitate any inducement element.  *Id*. at 540.

8        We need not delineate the outer bounds of the phrase "in connection with

9    the collection of any debt," however, because we have no difficulty in concluding

10   that an *attempt* to collect a debt—which we believe the Letter was—qualifies as a

11   communication "in connection with the collection of any debt."  Indeed, we see

12   few types of communications as more obviously "in connection with the

13   collection" of debts than attempts to collect debts.  *See, e.g.*, *Caceres v. McCalla

14   Raymer, LLC*, 755 F.3d 1299, 1303 (11th Cir. 2014) (concluding that a letter was "an

15   attempt to collect a debt" and therefore a "communication in connection with the

16   collection of a debt").  Moreover, in passing the FDCPA, Congress identified

17   abusive collection attempts as primary motivations for the Act's passage.  *See* S.

18   Rep. No. 95-382, at 2.  Accordingly, we think that treating an attempt to collect a

16

debt as a communication "in connection with the collection of any debt" easily

accords with the plain meaning of the broad statutory language, as well as with

the Act's remedial purpose of halting abusive collection practices and giving

debtors adequate information about their rights and obligations.[7]

Hart has sufficiently alleged that the Letter—viewed objectively—is an

attempt to collect a debt. The Letter references Hart's particular debt, directs

Hart to "mail [his] payments, including all past due payments, to FCI Lender

Services, Inc." at a specified address, and refers to the FDCPA by name. App.

123, 125. More critically, it warns Hart that he must dispute the debt's validity

within thirty days after receiving the Letter or his debt will "be assumed to be

valid." App. 125. Finally, and most importantly, the Letter, in its two-page

attachment, emphatically announces itself as an attempt at debt collection: "THIS

IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION

OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* A reasonable consumer

---

[7] Our decision in *Romea v. Heiberger & Assocs.*, 163 F.3d 111 (2d Cir. 1998), is also instructive on this point. In *Romea*, we rejected a debt collector's argument that a particular letter was not a "communication" under § 1692g because it was a "statutory condition precedent to commencing a summary eviction proceeding" under New York law. *Id.* at 116. We held that the collector's purpose was "at least in part to induce Romea to pay the back rent she allegedly owed," and we therefore ruled it "a 'communication' under 15 U.S.C. § 1692g(a)." *Id.*

1     would credit the Letter's warning, its instruction to take action within thirty

2     days, and its statement that it represents an attempt to collect a debt.

3          FCI asserts that the inclusion of RESPA-required notices in the Letter's

4     main body demonstrates that the Letter's purpose was merely to convey the

5     information that RESPA mandated.  In support of that position, it further notes

6     that the Letter does not discuss the current status of Hart's debt or the amount

7     due on his loan, nor does it explicitly demand payment from Hart.  But for the

8     reasons discussed above, even if it could be ascertained that *FCI's* sole intention

9     in sending the Letter was to comply with RESPA, we are hard put to accept that

10    a reasonable *consumer* receiving the Letter would necessarily understand that FCI

11    did not send the Letter in connection with the collection of her debt.  And we see

12    no reason that the Letter could not serve more than one purpose in any event.[8]

13    *See, e.g.*, *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 267 (3d Cir. 2013) ("The

14    letter and notice were an attempt to collect the [plaintiffs'] debt . . . . The absence

15    of an explicit payment demand does not take the communication outside the

16    FDCPA."); *Gburek*, 614 F.3d at 385 [7th Cir.] ("[T]he absence of a demand for

---

[8] Section 1692g instructs that a communication required by certain statutes, such as the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, shall "not be treated as an initial communication in connection with debt collection for purposes of this section."  15 U.S.C. § 1692g(e).  RESPA is not among the enumerated statutes.

18

1    payment is just one of several factors that come into play in the commonsense

2    inquiry of whether a communication from a debt collector is made in connection

3    with the collection of any debt.").

4          FCI further asserts that it is circular to conclude that the Letter's statement

5    that it is "an attempt to collect a debt" helps render the Letter a communication

6    "in connection with the collection of [a] debt." As FCI points out, the Act

7    elsewhere requires debt collectors to "disclose in the initial written

8    communication with the consumer . . . that the debt collector is attempting to

9    collect a debt and that any information obtained will be used for that purpose."

10   15 U.S.C. § 1692e(11). FCI argues that it would be unfair to consider this

11   statutorily-required language as evidence that the Letter is in actuality an

12   attempt to collect a debt. But a debtor receiving the Letter has no reason to know

13   that the language is required by the FDCPA or to believe that the language

14   mandated by § 1692e can safely be disregarded on that basis. To the contrary, as

15   we have highlighted, the Letter clearly announces itself an attempt to collect a

16   debt, and its other text only emphasizes the plausibility and gravity of that

17   announcement. We see no reason why we should not take it at its word, nor any

18   reason that a consumer would (or indeed should) fail to credit the clear language

19

1    of the document.  *See, e.g., Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 87-

2    88 (2d Cir. 2003) (holding that lender's agent's self-identification as a debt

3    collector in communication to borrower was relevant to whether lender

4    considered the loan in default).  While it may be unfortunate for debt collectors

5    that the use of a defective notice helps give rise to an obligation to provide a

6    proper notice, the solution is to improve the defective notice.

7            Indeed, defective § 1692g notices pose particular dangers to consumers.

8    Here for instance, because the Letter states that the debt will, after thirty days, be

9    "assumed to be valid," a consumer who fails timely to act upon the Letter might

10   believe that she has forfeited her right to challenge the accuracy of FCI's debt

11   assessment.  But under § 1692g(a)—which FCI paraphrased incompletely in the

12   Letter—such an unchallenged debt may be assumed to be valid only by the *debt*

13   *collector*, leaving the consumer free to contest the debt with the lender either

14   directly or in the courts.  *Compare* App. 125 (quoted *supra* pp. 6-7), *with* 15 U.S.C.

15   § 1692g(a).  By misleading the consumer into believing she had forfeited her right

16   to dispute the validity of her putative debt with the lender, FCI would have

17   frustrated a major objective of the FDCPA.

1    Finally, FCI points out that Congress, in explaining its decision to pass the

2    FDCPA, cited a number of aggressive practices engaged in by the debt collection

3    industry that it particularly intended to deter by passing the Act.  FCI's

4    argument seems to be that, because Congress "targeted specific methods of

5    collection," Appellee's Br. 19, which did not include communications such as the

6    Letter, the Act's notice requirements should not be triggered by the Letter.

7    Plainly, sending a writing such as the Letter is not as aggressive as making late-

8    night phone calls to debtors or engaging in some of the threatening practices that

9    Congress sought to end.  But that Congress cited the industry's worst practices

10   when passing the FDCPA does not limit the statute's purview to those practices,

11   when the text reaches well beyond.  FCI provides no reason to believe that

12   Congress did not intend the FDCPA to offer broad protection to debtors or that a

13   debt collector's failure to provide the required § 1692g notice should be excused

14   as no more than a *de minimis* violation, one from which the Act would not protect

15   consumers.  *See generally Vincent*, 736 F.3d at 98 (noting Congress's broad

16   remedial intent in adopting the FDCPA).

17    In sum, Hart has plausibly alleged that the Letter was a "communication

18   in connection with the collection of [a] debt."  Accordingly, the District Court

21

1    erred in dismissing the amended complaint and ruling as a matter of law that the

2    Letter did not trigger § 1692g's notice requirement.

3

4    **3.** **The Payment Statement**

5

6         Because we conclude that Hart has stated a claim based on the Letter, we

7    need not decide whether Hart alleged adequately that the Payment Statement

8    also was a communication in connection with the collection of a debt.  A debt

9    collector's duty to provide a § 1692g notice arises only upon the "*initial*

10    communication with a consumer in connection with the collection of any debt."

11    15 U.S.C. § 1692g(a) (emphasis added).  As Hart himself notes, "[t]here is only

12    one claim and one recovery of damages regardless of the number of collection

13    communications sent without complying with § 1692g."  Appellant's Reply Br.

14    17.  Since Hart has plausibly alleged that the Letter was sent "in connection with

15    the collection of any debt," any allegations relating to the Payment Statement are

16    irrelevant in determining whether Hart stated a claim that FCI violated the Act

17    by failing to provide a § 1692g notice.

18         Similarly, we need not decide whether the District Court abused its

19    discretion in denying Hart's request to amend his complaint a second time.

22

1   Hart's request to amend was expressly conditioned on a ruling that the Letter

2   was not a communication "in connection with the collection of any debt":  at oral

3   argument before the District Court on FCI's motion to dismiss, Hart stated that

4   he "would ask for an opportunity to replead with [the Payment Statement], if the

5   Court were inclined to rule" that the Letter did not trigger § 1692g notice

6   obligations.  App. 191; *see also* Appellant's Br. 40 ("[T]he Court should . . . hold

7   that plaintiff's amended complaint stated a claim, or alternatively, that plaintiff

8   should be allowed to amend.").[9]  Because we conclude that Hart adequately

9   alleged that the Letter *did* trigger FCI's notice obligations, we decline to address

10  the District Court's denial of Hart's request to amend.

11

12                              **CONCLUSION**

13          Applying an objective standard to resolve the question, we decide that

14  Hart adequately alleged that the Letter was an "initial communication . . . in

15  connection with the collection of [a] debt," so as to obligate FCI to provide Hart a

---

[9] Hart requested leave to amend three months after the amendment deadline set by Magistrate Judge Feldman's Scheduling Order had passed.  *See* App. 85.  The Scheduling Order also warned that no extension of the deadline would be granted "except upon written application, made *prior to the cutoff date*, showing good cause for the extension."  App. 87 (emphasis in original).  Hart did not request an extension before the deadline passed, and he did not identify any good cause for an extension before the District Court.  *See* App. 194-95.

23

1    § 1692g notice.  The District Court thus erred in granting FCI's motion to dismiss.

2    Because Hart sufficiently alleged that the Letter triggered FCI's notice

3    obligations, we decline to address his request to amend his complaint to add

4    allegations regarding the Payment Statement.  Accordingly, we VACATE the

5    District Court's judgment, and REMAND for further proceedings consistent with

6    this opinion.